# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

MAYONNA BIZZELL, as Personal Representative　　　　　　　　　　　　　　　　PLAINTIFF
of the Estate of Willetta Reaves and as
Next Friend of G.B., a minor

v.　　　　　　　　　　　　　　　No. 4:16CV00376 JLH

TRANSPORT CORPORATION OF
AMERICA, INC.; and JIMMIE MARTIN
"MARTY" HARPER, JR.　　　　　　　　　　　　　　　　　　　　　　　　　　DEFENDANTS

## OPINION AND ORDER

Mayonna Bizzell brings this action as personal representative of the Estate of Willetta Reaves and as next friend of G.B., a minor, against the defendants, Transport Corporation of America, Inc., and Jimmie Martin Harper, Jr., seeking damages for the death of Willetta Reaves, who sustained fatal injuries in a motor vehicle accident. Late on May 15, 2016, Reaves was traveling east on Interstate 40 in Pulaski County, Arkansas, when her vehicle was rear-ended by a tractor-trailer operated by Harper, an employee of Transport Corporation. Bizzell[1] filed suit in the Circuit Court of Pulaski County on June 3, 2016, and the defendants removed the action to this Court on June 15, 2016, based on diversity. Bizzell alleges claims for negligence against Harper and against Transport Corporation in the form of negligent entrustment, as well as claims against both defendants under Arkansas's wrongful death and survival statutes. She also seeks punitive damages. Transport Corporation has admitted that it is vicariously liable for Harper's negligence, if any, based on the doctrine of respondeat superior.

The defendants have filed two motions for partial summary judgment. In the first, the defendants assert that they are entitled to summary judgment on punitive damages and whether

---

[1] The personal representative was originally Altha Reaves, who died after this action was commenced.

Transport Corporation is directly liable for its own negligence. Document #57. In the second, Transport Corporation argues it is entitled to summary judgment on the wrongful death claim because Bizzell and G.B. are not beneficiaries under Arkansas's wrongful death statute. Document #62.

I.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*.

## II.

**A.     Punitive Damages**

Bizzell seeks "the maximum amount of punitive damages allowed by law." Document #42-1 at 11, ¶45. The defendants maintain that the evidence is insufficient to allow a claim for punitive to go to the jury. Document #58 at 3-9. Bizzell bases her argument for punitive damages largely, though not exclusively, on her claim of negligent entrustment. She says that Transport Corporation ignored Harper's poor driving history and should have known that Harper's risky driving habits would result in injury but allowed him to continue driving anyway. Document #71 at 10.

Inasmuch as this is a diversity case and the accident occurred in Arkansas, the law of the State of Arkansas governs. *See Burger Chef Sys., Inc. v. Govro*, 407 F.2d 921, 923 (8th Cir. 1969). In Arkansas, the standard for an award of punitive damages is set by statute:

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> > (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or
> >
> > (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206 (2003). Unless a reasonable jury could conclude by clear and convincing evidence that the defendants knew or ought to have known that their conduct would naturally and probably result in injury or damage, and that they continued the conduct with malice or in reckless disregard of the consequences from which malice may be inferred, summary judgment

is proper. *See Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007). Negligence alone, even gross negligence, does not justify punitive damages. *Alpha Zeta Chapter of Pi Kappa Alpha Fraternity by Damron v. Sullivan*, 293 Ark. 576, 587, 740 S.W.2d 127, 132 (1987).

Generally, the Arkansas Supreme Court has limited punitive damages in cases arising out of motor vehicle accidents to two situations: racing and drunk driving. *See Perry v. Stevens Transport, Inc.*, No. 3:11CV00048 JLH, 2012 WL 2805026 at *4 (July 9, 2012) (citing *Nat'l Bank of Commerce v. McNeil Trucking Co.*, 309 Ark. 80, 88, 828 S.W.2d 584, 588 (1992)). The Arkansas Supreme Court has, however, affirmed punitive damages in some other contexts and in *D'Arbonne Construction Co. v. Foster*, the court explained that "[w]hether a vehicle is being operated in such a manner as to amount to wanton or willful conduct in disregard of the rights of other must be determined by the facts and circumstances of each individual case." 354 Ark. 304, 309, 123 S.W.3d 894, 898 (2003).

In *D'Arbonne*, a logging truck collided head-on with a passenger vehicle, killing a father and his daughter, and injuring two other passengers. *Id*. at 306, 123 S.W.3d at 896. One of the surviving passengers, the wife and mother of the deceased, filed a personal injury and wrongful death action against the driver and his employer. *Id*. At trial, the jury found that the driver and his employer were negligent, assigned them each fifty percent of the fault, and awarded punitive damages. *Id*. The sole issue before the court on appeal was whether the punitive damages award was appropriate. *Id*. The court recited the evidence produced at trial: The driver was speeding at the time of the accident; the driver received five citations for speeding or defective equipment within the five years preceding the accident; the logging truck had approximately 500,000 miles on it; the company said

4

that it had a weekly maintenance schedule; the company mechanic performed the maintenance; the work performed was recorded in a log; the last log entry indicating maintenance had been performed on the brakes was recorded in 1994, five years before the accident occurred; the driver told the state trooper who reported to the scene of the accident that he had told the company to fix the truck; an expert testified that the condition of the brakes contributed to the accident; and another expert testified that someone had intentionally backed off the brakes instead of performing the proper maintenance. *Id*. at 309-10, 123 S.W.3d at 898-99.

The court held that the evidence—especially testimony that the driver had informed the company about the dangerous condition of the truck and expert testimony that the company had knowingly altered the brakes—was sufficient to support punitive damages. *Id*. at 311, 123 S.W.3d at 901. *See also Potts v. Benjamin*, 882 F.2d 1320, 1327 (8th Cir. 1989) (affirming an award of punitive damages). The court distinguished the facts from those before it in another trucking accident case: *Nat'l By-Prods., Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731 S.W.2d 194 (1987). In that case, the truck weighed 480 pounds over the legal limit, the driver had received six citations in the prior year for driving an overweight truck, and his employer paid all the citations. *Id*. at 494, 731 S.W.2d at 196. Though the employer had in place a disciplinary procedure for drivers who received too many citations, the employer did not discipline, or even caution, the driver. *Id*. Employee testimony also revealed that the truck's brakes were faulty, but there was no evidence that the employer knew the brakes were faulty. *Id*. at 495, 731 S.W.2d at 196. The court reversed the jury's award of punitive damages. *Id*. at 495, 731 S.W.2d at 196-197.

Here, Harper has received three traffic citations—two speeding tickets driving his personal vehicle and one lane violation driving a tractor-trailer. Document #57-1 at 4. He was driving for

Tyson Foods, Inc., when he received the lane violation, but he failed to disclose it and lost his job. *Id*. at 6. In addition, he has received citations from the Department of Transportation for continuing to drive though the lights on his tractor-trailer had gone out. Document #29 at 3, ¶14. In either 2007 or 2008, while driving his personal truck, Harper was involved in a three-car pile-up and totaled his truck; but another driver was found to be at fault. Document #57-1 at 5. Harper was involved in three preventable accidents while maneuvering a tractor-trailer at low speeds between 2011 and early 2012: (1) he hit a concrete barrier; (2) he backed into the cab of another truck; and (3) he hit a fence. *Id* at 4. None of these accidents resulted in personal injury. *Id*. Harper was struck by another tractor-trailer in 2014. *Id*. at 5. A sign blew into the side-mirror of his tractor-trailer in 2016. Document #57-2 at 3. The defendants submitted a document recording Harper's safety performance history at Tyson Foods, Inc., which shows he was involved in seven accidents between March 2012 and January 2014. Document #57-3. Six were not preventable. *Id*. The accident in which he hit a fence was preventable. *Id*.

In addition to citations, violations, and accidents, Bizzell says that Transport Corporation also knew or should have known that Harper had a "dangerous habit of phone use." Document #71 at 8. In his deposition, Harper admitted that he had been stopped "back in December" for having a phone in his hand but said that a judge dismissed the citation. The deposition took place on May 24, 2017, and Harper was presumably referring to December 2016. This incident is therefore irrelevant to what Transport Corporation knew about Harper's driving history and habits in May 2016, when the accident at issue occurred. Second, Bizzell draws a tenuous connection between this fact and Transport Corporation's knowledge of Harper's phone use: Transport Corporation had a policy prohibiting the use of cell phones, but Harper's supervisor did not "immediately report" the

violations. Document #71 at 7. Nothing in the record indicates that the supervisor had access to the phone records. Even if the supervisor had access to the records, they would not have been available until after the accident. In any event, the cell phone records indicate, at most, that Harper, in plaintiff's words, "was making outgoing calls while on duty just hours before the collision." *Id.* No evidence shows that Harper was using his cell phone at the time of the accident or that the cell phone had any effect on his driving at the time of the accident.

Bizzell also argues that Harper's failure to brake in time indicates that he was inattentive. Document #71 at 6-7. Perhaps so. But that does not show that he was using his cell phone; nor is his inattentiveness sufficient to meet the high standard for punitive damages.

The citations, violations, and accidents upon which Bizzell relies to establish that Transport Corporation knew, or had reason to believe, that allowing Harper to continue driving would probably cause injury to a motorist are no more serious than those the driver received in *Nat'l By-Prods., Inc.*, nor in other vehicle accident cases in which either Arkansas courts or courts applying Arkansas law have refused punitive damages. *See Elrod v. G & R Constr. Co.*, 275 Ark. 151, 155, 628 S.W.2d 17, 19 (1982); *Perry*, 2012 WL 2805026 at *6; *Wheeler v. Carlton*, No. 3:06CV00068 GTE, 2007 WL 30261 at *10 (E.D. Ark. Jan. 4, 2007). While Harper does not have a spotless driving record, the blemishes are limited to collisions with stationary objects, collisions at low speeds, minor citations, and accidents for which he was not at fault. Transport Corporation had no reason to believe that allowing Harper to continue driving a truck would likely result in injury or death.

Nor was Harper's conduct on the night in question sufficiently reckless to justify an award of punitive damages against him. Bizzell argues that Harper was going too fast for the conditions.

7

Document #71 at 8-9. He was traveling at 68 miles per hour, which was three miles per hour above the speed limit. His headlights were on low beam, which, according to Bizzell, means that he could only see 250 feet in front of him, whereas at the rate of 68 miles per hour he would travel nearly 700 feet in 7 seconds. Thus, according to Bizzell, Harper "was bound to collide with any object in the 450 feet ahead of his headlights." *Id*. at 9. Assuming those facts to be true, they are not sufficient to support submitting a punitive damage claim to the jury. Driving at the rate of 68 miles per hour in a zone in which the maximum speed limit is 65 miles per hour may be negligent, but it is not the kind of speeding that would justify an award of punitive damages. *Cf. Nat'l By-Prods.*, 292 Ark. at 494-95, 731 S.W.2d at 196. Nor would the fact that Harper's headlights were on low beam, rather than high beam, while traveling on Interstate 40 in Pulaski County justify an award of punitive damages.

Bizzell has failed to provide clear and convincing evidence to show that the defendants knew or ought to have known, in the light of surrounding circumstances, that their conduct would naturally and probably result in injury or damage and that they continued that conduct in reckless disregard of the consequences from which malice may be inferred; and she has failed to present evidence to show that the defendants intentionally pursued a course of conduct for the purpose of causing injury or damage. Therefore, the defendants are entitled to summary judgment on the issue of punitive damages.

**B.     Direct Liability**

Bizzell alleges claims against Transport Corporation both for the negligence of its agent, Harper, and for its own act of negligence in entrusting Harper with driving the truck. When a defendant denies liability, a plaintiff may proceed under two consistent theories of recovery, such

as respondeat superior (vicarious liability) and negligent entrustment (direct liability). *Elrod*, 275 Ark. at 154, 628 S.W.2d at 18-19. When the defendant has admitted vicarious liability, however, a plaintiff may proceed only on a theory of respondeat superior. *Id*. (citing *Kyser v. Porter*, 261 Ark. 351, 548 S.W.2d 128 (1977)). "[A]n exception exists to this rule when a plaintiff has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee." *Wheeler*, 2007 WL 30261 at *12 (citing *Elrod*, 275 Ark. at 155, 628 S.W.2d at 19). Here, Transport Corporation has admitted that it is vicariously liable for Harper's negligence, if any, based on the doctrine of respondeat superior, and the Court has determined that the evidence is insufficient to support a claim for punitive damages. Therefore, the defendants are entitled to summary judgment on the negligent entrustment claim. Bizzell may proceed against Transport Corporation only on a theory of respondeat superior.

**III.**

In the second motion for summary judgment, Transport Corporation argues that it is entitled to judgment as a matter of law on the wrongful death claim because Bizzell and G.B. do not qualify as beneficiaries under Arkansas's wrongful death statute. Document #62. Bizzell and G.B. are biological children of the decedent, Willetta Reaves. But in 2006, Willetta Reaves relinquished her parental rights, and her parents, Altha and Willie Reaves, adopted them.[2]

An action for wrongful death is a statutory creation; it did not exist at common law. *Babb v. Matlock*, 340 Ark. 263, 265, 9 S.W.3d 508, 509 (2000). Therefore, Arkansas courts construe the

---

[2] Bizzell does not concede that a legally valid adoption occurred. Document #71 at 3. She surmises that "further investigation and discovery" might show that the adoption was invalid. Document #78 at 2. Transport Corporation has submitted a certified copy of an Amended Decree of Adoption entered by the Probate Court of Pulaski County, Arkansas, on July 17, 2006. *See* Defendant's Exhibit F, filed under seal on July 24, 2017. Bizzell has offered nothing to show that this decree is invalid, nor has she presented an affidavit or declaration under Fed. R. Civ. P. 56(d).

9

statute strictly, which "'requires nothing to be taken as intended that is not clearly expressed.'" *Id.* (quoting *Lawhon Farm Servs. v. Brown*, 335 Ark. 276, 279, 984 S.W.2d 1, 4 (1998)). The statute allows certain persons—statutory beneficiaries—to recover for personal losses they endure due to a person's death. *See* Ark. Code Ann. § 16-62-102(a)(1) (2013).

Persons considered statutory beneficiaries include the surviving spouse, children, father, mother, brothers, and sisters of the deceased person; persons, regardless of age, standing in loco parentis to the deceased; and persons, regardless of age, to whom the deceased stood in loco parentis at any time during the life of the deceased. *Id.* § 102(d). Bizzell says that even if she and G.B. legally are not the decedent's children, legally they are her sisters. Document #71 at 2, 3. She argues further that the decedent stood in loco parentis to them. *Id.*

Ark. Code Ann. § 9-9-215(a)(1) (2011) explains that the effects of an adoption decree are:

> [T]o relieve the biological parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and his or her biological relatives, including his or her biological parents, so that the adopted individual thereafter is a stranger to his or her former relatives for all purposes. This includes inheritance and the interpretation or construction of documents, statutes, and instruments . . . .

Pursuant to this provision, the adoption terminated the parent-child relationship between the decedent and her children. *Webb v. Harvell*, 563 F. Supp. 172, 175 (W.D. Ark. 175) (holding that biological child of decedent, who was adopted by decedent's sister, could not recover as a child of decedent under wrongful death statute). *See also Vice v. Andrews*, 328 Ark. 573, 577, 945 S.W.2d 914, 916 (1997) ("[W]ith very narrow and specific exceptions, all legal relationships between the adopted individual and her natural relatives are terminated upon adoption."). Therefore, Bizzell and G.B. may not recover for the wrongful death of the decedent, their biological mother, as her children.

10

Bizzell also maintains that the decedent acted in loco parentis to herself and G.B., so they may recover as wrongful death beneficiaries under section 102(d)(3). Document #71 at 3-5. The Arkansas Supreme Court has defined "in loco parentis" as "in place of a parent; instead of a parent; charged factitiously with a parent's rights, duties, and responsibilities." *Standridge v. Standridge*, 304 Ark. 364, 372, 803 S.W.2d 496, 500 (1991) (quoting Black's Law Dictionary 708 (5th ed. 1979)). The court explained that in making the determination whether a person stands in loco parentis to a child, courts consider the totality of the circumstances and "do not lightly infer the intent of the person seeking to be considered as standing in loco parentis." *Daniel v. Spivey*, 2012 Ark. 39, 7, 386 S.W.3d 424, 428. The wrongful death statute says that persons to whom the deceased stood in loco parentis at any time during the life of the deceased are beneficiaries. Ark. Code Ann. § 16-62(102)(d)(3). Prior to amendment in 2001, the statute did not include the modifier "at any time during the life of the deceased." *Zulpo v. Blann*, 2013 Ark. App. 750, 4, 2013 WL 6712532 at \*\*2. The relevant time during the life of the decedent in this case is from the adoption until her death. Prior to the adoption, the decedent was naturally charged with a parent's rights, duties, and responsibilities, so she could not have stood in loco parentis. After the adoption, she was no longer naturally charged with those rights, duties, and responsibilities but could assume them in loco parentis.

In *Daniel v. Spivey*, a step-parent sought in loco parentis status. 2012 Ark. at 8, 386 S.W.3d at 429. There was testimony that the child and stepparent were close, that they participated in recreational activities together, and that the stepparent disciplined the child "when necessary and praised her when justified." *Id*. The trial court characterized the relationship as one in loco parentis. *Id*. On appeal, the Arkansas Supreme Court also considered that the stepparent occasionally

11

provided necessities, babysat, attended school programs, and attended to the child's needs. *Id.* The court held that the facts did not rise to the level necessary to establish an in loco parentis relationship; rather, the facts demonstrated a caring stepparent-stepchild relationship and fell "well short" of establishing that the stepparent "embraced the rights, duties, and responsibilities of a parent." *Id.* at 9, 386 S.W.3d at 429-30. *Cf. Webb*, 563 F. Supp. at 175-76.

Here, the record includes deposition testimony from Bizzell and from G.B. Bizzell testified that she and G.B. had lived with their grandmother since they were born. Some time after the adoption, Bizzell and G.B. moved to Michigan with their grandparents where they lived for five years. The decedent remained in Little Rock. When the grandparents and children returned to Little Rock, they and the decedent lived together. Bizzell was in the ninth grade and G.B. was in the sixth grade when they moved back to Little Rock. Bizzell testified that either the decedent or their grandmother would take them shopping, depending on who had money at the time. Bizzell testified that the decedent was her confidante and that she felt comfortable discussing topics with the decedent that she would not discuss with her grandmother. Bizzell called the decedent "mom" or "mama" and called Altha Reaves "granny." G.B. testified that the decedent visited them three times when they lived in Michigan. When the family moved back, G.B. says that the decedent "was there for [her] more," took her to school, and attended cheerleading events. Her grandmother got sick and the decedent began to step in and help more.

These facts do not support a finding that the decedent fully assumed the obligations incident to the parental relationship and discharged those obligations after she consented to the adoption of her children. As in *Daniel*, the facts show that the decedent occasionally provided Bizzell and G.B. with necessities, attended school programs, provided transportation, and maintained a friendly

12

relationship with Bizzell. *See* 2012 Ark. at 9, 386 S.W.3d at 429-30. This is not enough to establish in loco parentis relationships between the decedent and Bizzell and G.B. Therefore, Bizzell and G.B. may not recover for the wrongful death of the decedent as beneficiaries under Ark. Code Ann. § 16-62-102(d)(3).

Transport Corporation says that just as Bizzell and G.B. cannot be considered the children of the decedent for the purposes of wrongful death recovery, neither can they be considered her sisters. It focuses on the portion of Ark. Code Ann. § 9-9-215(a)(1) that says the adopted child is a stranger to her former relatives for all purposes. That argument overlooks section 215(a)(2), which explains that an adoption decree "create[s] the relationship of parent and child between petitioner and the adopted individual, as if the adopted individual were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments . . . ." The purpose of the provision in section 215(a)(1) stating that an adopted child becomes a stranger to her biological relatives is "to strengthen the adoptive family against interference from blood kin." *In the Matter of the Adoption of Perkins/Pollnow,* 300 Ark. 390, 391, 779 S.W.2d 531, 532 (1989). It would not serve that purpose here to disregard section 215(a)(2) and preclude Bizzell and G.B. from any recovery under the wrongful death statute. They were adopted by Willetta Reaves's parents and thereby, in the eyes of the law, became her sisters. They may recover under the wrongful death statute as her sisters.

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment is GRANTED. Document #57. Transport Corporation's motion for partial summary judgment is DENIED. Document #62.

IT IS SO ORDERED this 4th day of August, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE